# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SOPHAN CHHUM,
*Plaintiff*,

v.

CONSTANCE ANSTETT, fiduciary of the
estate of Ruth T. Bedford,
*Defendant*.

No. 3:15-cv-00900 (JAM)

## RULING GRANTING SUMMARY JUDGMENT

For many years, plaintiff Sophan Chhum worked for a wealthy woman who owned a small animal farm in Connecticut. For the last years of the woman's life until she died at the age of 99, she trusted plaintiff to live on the farm and to take care of her numerous farm animals.

After the woman passed away, plaintiff filed this lawsuit against her estate to claim that under the Fair Labor Standards Act (FLSA) he should have been paid overtime for the hours that he worked in excess of 40 hours per week while living on the farm. Defendant has moved for summary judgment on the ground that plaintiff's work fit within the "agricultural exemption" to the FLSA. I agree, and therefore I will grant defendant's motion for summary judgment.

### BACKGROUND

Ruth Bedford owned a small farm known as "Nyala Farm" in Easton, Connecticut, some miles away from where Bedford lived in Westport, Connecticut. The small farm had a farmhouse, stables, and other outbuildings.

Plaintiff first started working at Bedford's farm in 1993. From 1993 until March 2010, plaintiff commuted to the farm from his home in Bridgeport, Connecticut, and there he assisted another person who lived on the farm as resident caretaker. In March 2010, the resident caretaker

passed away, and Bedford asked plaintiff to move to the farm to assume the resident caretaker's responsibilities. Plaintiff agreed, and he lived there until December 2014 when the farm was sold shortly after Bedford passed away.

During the time that plaintiff lived there, Nyala Farm housed between three and five retired racehorses, a mule, a donkey, two llamas, two cows, about twenty chickens, ten ducks, twenty pigeons, and a dog. There was also a 1,000 pound pig that had belonged to the former caretaker.

Plaintiff fed the animals twice a day, took the livestock from the stable to the pasture for exercise, sprayed the horses with fly spray, groomed the horses, and checked on the horses at night. Plaintiff also drove a truck owned by Bedford to buy food and other supplies for the livestock and other animals. He oversaw the animals' medical care, calling and assisting the veterinarian as needed. Every day, he called Bedford to report how her animals were doing.

Plaintiff also maintained the farm grounds, including shoveling snow, cutting the grass, trimming the trees, and whacking the weeds. He repaired fences and the farmhouse as needed. He was assisted in these tasks by an hourly worker who worked about 40 hours a week. Otherwise, plaintiff or his wife had to remain at the farm almost constantly because of the demands of caring for the animals.

### DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most

favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan*, 134 S. Ct. at 1866.

The FLSA requires that an employer pay an employee overtime for hours worked in excess of 40 hours per week if an employee either "is engaged in commerce or in the production of goods for commerce," or "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).[1] But an employee who works in "agriculture" for a small agricultural operation, however, is exempt from these overtime requirements. 29 U.S.C. § 213(a)(6)(A).[2]

The FLSA, in turn, defines the term "agriculture" broadly to include:

> farming in all its branches and among other things includes . . . the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations. . . .

29 U.S.C. § 203(f).

---

[1] At oral argument, the Court queried whether the "commerce" requirement for application of the FLSA has been established in this case. Because I do not need to resolve that question as a jurisdictional matter, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), I decline to resolve it now.

[2] The agriculture exemption extends in relevant part to "any employee employed in agriculture (A) if such employee is employed by an employer who did not, during any calendar quarter during the preceding calendar year, use more than five hundred man-days of agricultural labor." 29 U.S.C. § 219(a)(6)(A). There is no dispute among the parties that Nyala Farm did not use more than 500 man-days of agricultural labor during any quarter of preceding calendar years.

The Supreme Court has explained that "[t]he exemption was meant to embrace the whole field of agriculture," but "was meant to apply only to agriculture." *Maneja v. Waialua Agr. Co.*, 349 U.S. 254, 260 (1955). It has also explained that the meaning of "agriculture" has "two distinct branches" that include not only a "primary meaning" of "farming in all its branches," but also a secondary and "broader meaning" to include "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with 'such' farming operations." *Farmers Reservoir & Irrigation Co.*, 337 U.S. 755, 766 (1949).[3]

To the same effect, the United States Department of Labor has promulgated regulations that divide agriculture into two categories: primary agriculture and secondary agriculture. 29 C.F.R. § 780.105(a). Primary agriculture includes "farming in all its branches" and includes among other activities the "raising of livestock." 29 C.F.R. § 780.105(b). Secondary agriculture includes "any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with 'such' farming operations." 29 C.F.R. § 780.105(c); *see also Barks v. Silver Bait, LLC*, 802 F.3d 856, 861 (6th Cir. 2015) (discussing regulatory definition of "agriculture" for purposes of the FLSA).

Here, defendant contends that plaintiff engaged in the primary agricultural practice of raising livestock. The term "livestock" includes "[c]attle (both dairy and beef cattle), sheep, swine, horses, mules, donkeys, and goats." 29 C.F.R. § 780.120. The "raising" of livestock is defined as "the breeding, fattening, feeding, and general care of livestock." 29 C.F.R. § 780.121.

---

[3] Although the Supreme Court has instructed that exemptions to the FLSA under 29 U.S.C. § 213 are to be narrowly construed, it has declined to apply this principle to definitional terms of the FLSA under 29 U.S.C. § 203. *See Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 879 n.7 (2014). This case, of course, calls upon me to interpret the meaning of "agriculture" as it is defined in 29 U.S.C. § 203(f).

From plaintiff's deposition testimony and his declaration, his animal caretaking responsibilities included caring for his employer's retired racehorses as well as other animals, such as a donkey, a mule, llamas, chickens, pigeons, ducks, a pig, and a dog. *See* Doc. #32-2 at ¶¶ 5-6, Doc. #33 at 17-18. With the exception of the dog, all of these animals are considered livestock or poultry.[4] Plaintiff fed and generally cared for these animals. Plaintiff was therefore doubtlessly employed in "agriculture" when he cared for the animals at Nyala Farm.

The closer issue in this case is whether the rest of plaintiff's work that did not involve the feeding and general care of livestock also qualifies for the agriculture exemption. As noted above, the agriculture exemption also includes secondary agricultural activities, defined to include activities that are performed by the farmer or on the farm property and that are "incidental to" or "in conjunction with" farming activities, and the Supreme Court has recognized that "'the line between practices that are and those that are not performed 'as an incident to or in conjunction with' such farming operations is not susceptible of precise definition.'" *Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 408 (1996) (quoting 29 C.F.R. § 780.144).

As the regulations otherwise provide, it is "generally" the case that "a practice performed in connection with farming operations is within the statutory language [for secondary agricultural activity] only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business." 29 C.F.R. § 780.144. Courts have recognized examples of such secondary agricultural activities to include: the transport of workers and supplies to farm fields, the repair and servicing of equipment necessary to farm operations, flying a crop-dusting plane, cooking for field workers, and even some kinds

---

[4] Horses are expressly included in the regulatory definition of "livestock," *see* 29 C.F.R. § 780.120, and the regulations further provide that the breeding, raising, and training of racehorses on a farm falls within the agriculture exemption, *see* 29 C.F.R. § 780.122.

5

of clerical work. *See Maneja*, 349 U.S. at 260-64; *Sariol v. Florid Crystals Corp*., 490 F.3d 1277, 1279 (11th Cir. 2007).

I conclude that the rest of plaintiff's work was incidental to and in conjunction with his primary agricultural work of raising livestock. Many of plaintiff's activities that were not direct animal care (such as feeding, exercising, and grooming) were only one step away (buying food for the animals, repairing fences on pastures that housed animals, burying the animals when they died). Other activities, such as mowing the lawns and repairing the house, were perhaps less directly related to the animal care, but they were done on and to support the farm, the sole purpose of which was to provide a place for the animals to live. Certainly, none of these activities were done to support some independent business or for purposes having nothing to do with the support of the farm and its animals.

In *Adkins v. Mid-American Growers, Inc*., 167 F.3d 355 (7th Cir. 1999), the Seventh Circuit considered the applicability of the agricultural exemption to a corporate commercial nursery and specifically to the activities of a nursery worker who spent some of his time mowing the lawn and gardening at the corporate president's home that was located on the same property as the nursery's greenhouse. The court concluded that this "clearly was nonexempt activity," because "the primary purpose was to make the president's home attractive," and it further noted that "a nonagricultural activity that would be undertaken even if the actor weren't engaged in agriculture is not secondary agriculture." *Id.* at 359.

I conclude that *Adkins* is distinguishable. Here, plaintiff's maintenance work was not performed on the home where his employer Bedford lived but on the property of a caretaker home. Bedford had required that plaintiff lived in that home, as a condition of employment and as necessary for the supervision of and safety of the farm's many animals, to perform his animal

caretaking activities. The basic care and maintenance of the home was incidental to and in conjunction with plaintiff's primary agricultural activities.

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Doc. #26) to dismiss plaintiff's claim under the Fair Labor Standards Act is GRANTED on the ground that plaintiff's employment for the relevant time period that he resided and worked at the farm was subject to the agriculture exemption. I decline in my discretion to exercise supplemental jurisdiction over plaintiff's remaining state law claims. *See Kroshnyi v. U.S. Pack Courier Services, Inc.*, 771 F.3d 93, 102 (2d Cir. 2014). The Clerk of Court shall enter judgment for defendant and dismiss this case.

It is so ordered.

Dated at New Haven this 9th day of August 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge